**The below described is SIGNED.**

**Dated: May 12, 2009**

_R. Kimball Mosier_
**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>**Orin A. Timothy and**<br>**Karen D. Timothy,**<br><br>Debtors. | Bankruptcy Number: 08-28332<br><br>Chapter 7 |

## MEMORANDUM DECISION

This matter is before the Court on the continued confirmation hearing of the proposed Amended Chapter 13 Plan filed by Orin A. and Karen D. Timothy ("Debtors"). The Chapter 13 trustee, Kevin R. Anderson ("Trustee"), has objected to confirmation of the Debtors' plan because the proposed return to non-priority unsecured creditors does not satisfy the projected disposable income requirements of 11 U.S.C. § 1325(b).[1]

The issues before the Court are: (1) are Schedules I and J of Official Form 6 an appropriate method to calculate "projected disposable income" under § 1325(b)(1)(B) for a chapter 13 debtor whose monthly disposable income under § 1325(b) ("Disposable Income") is

---

[1] Statutory references herein are to Title 11 of the United States Code, unless stated otherwise.

negative, and (2) what is the applicable commitment period for a chapter 13 plan where the debtor has Current Monthly Income as defined in § 101(10A) ("Current Monthly Income") above the applicable median income, has negative Disposable Income, and has a positive projected disposable income calculated using Schedules I and J? An additional issue in this case is whether the Debtors' social security income may be included in the calculation of their projected disposable income but then partially excluded from Chapter 13 plan payments.

This Court concludes: (1) when a debtor's Disposable Income is negative, in order for the debtor to propose a confirmable chapter 13 plan, projected disposable income under § 1325(b)(1)(B) may be calculated using Schedules I and J, and (2) when a debtor's Current Monthly Income is above the applicable state median income the "applicable commitment period" is defined by § 1325(b)(4) and is 60 months in all instances. The Court also finds that when debtors include social security income to calculate a positive projected disposable income, all of the debtors' projected disposable income, including any amount attributable to social security income, to be received in the applicable commitment period must be applied to make payments under the chapter 13 plan.

## FACTUAL BACKGROUND

The Debtors filed their chapter 13 petition for relief on November 24, 2008. Pursuant to the Debtors' original, amended, and second amended Official Form 22C ("Form 22C"), the Debtors' Current Monthly Income is $6,181.31 and exceeds the median family income for a household of the same size in Utah. The Debtors' monthly Disposable Income reflected on their second amended Form 22C is -$188.70 (negative $188.70).

On February 5, 2009, the Trustee filed an Amended Objection to Confirmation arguing that because this is an above-median income case, the applicable commitment period requires 60 monthly payments under § 1325(b)(4)(A)(ii)(II). On February 25, 2009, the Debtors filed amended Schedules I and J because Mr. Timothy lost his job. The amended Schedules I and J disclose total monthly income of $4,910.00 and total monthly expenses of $4,780.00, resulting in Schedule J monthly net income of $130.00. Included in the Schedule I income is $1,141.00 of social security income.

The Debtor's current plan proposes payments of $130.00 per month for so long as necessary to return $1,750.00 to non-priority unsecured creditors. There is no minimum plan term. The liquidation analysis in the Debtors' current plan states that $1,394.06 would be available for general unsecured creditors in a chapter 7 case. The plan also provides for payment of the Trustee's fees and the Debtors' attorney's fees in the amount of $6,574.00 through the plan. No other claims or expenses are to be paid through the plan.

**ANALYSIS**

In the case of *In re Lanning*, 545 F.3d 1269 (10th Cir. 2008), the Tenth Circuit Court of Appeals considered "the proper way to calculate the projected disposable income of an above-median Chapter 13 debtor under amendments to the bankruptcy code effected by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (BAPCPA)."[2] After considering alternative methods to calculate a debtor's projected disposable

---

[2] *Id.* at 1269.

income, the Court expressly adopted the "forward-looking approach" to determine a chapter 13 debtor's projected disposable income.[3]   As the Tenth Circuit Court explained:

> Under that approach a Chapter 13 debtor's six-month pre-petition "disposable income" (as defined by statute) is presumed to be the debtor's "projected disposable income" for purposes of establishing the monthly sum that the debtor must commit to repayment of unsecured creditors in order to advance a confirmable payment plan and overcome objections to it.   The forward-looking approach permits the amount of projected disposable income to be rebutted upon a showing of special circumstances at the time of plan confirmation.[4]

The *Lanning* Court also analyzed and rejected a different method, "'the mechanical approach', which equates a chapter 13 debtor's projected disposable income with the statutorily defined 'disposable income' and then 'projects' that amount over the length of the applicable commitment period."[5]

In the present case, the Debtor's maintain that a *Lanning* analysis is not needed because "the issue is moot."  The Debtors contend "the only reason to pursue a *Jass*[6]/*Lanning* analysis is when the significant loss of income results in a situation where the debtor is incapable of making the payments required under the original [Form 22C] analysis.  When the result of the pre-petition 6-month CMI DIT[7] analysis is negative, the debtor can always pay the zero requirement result to the unsecured creditors."

---

[3] *Id.* at 1270.

[4]*Id.*

[5]*Id.*

[6]<u>Jass</u> is a reference to a bankruptcy case decision *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006).

[7]Although the Debtors do not define "CMI DIT" in their memorandum, the Court believes Debtors' use of "CMI DIT analysis" means "Current Monthly Income Disposable Income Test analysis."

**A.      If a Debtor's Form 22C Disposable Income is Negative, the Forward-Looking Approach May Be Applied to Establish a Positive Projected Disposable Income.**

It is not necessary for this Court to restate the *Lanning* Court's detailed analysis that concluded the forward-looking approach is the appropriate method for determining a chapter 13 debtor's projected disposable income. After carefully comparing the forward-looking approach with the mechanical approach, the *Lanning* Court held as follows:

> For the foregoing reasons, we hold that, as to the income side of the § 1325(b)(1)(B) inquiry, the starting point for calculating a Chapter 13 debtor's "projected disposable income" is presumed to be the debtor's "current monthly income," as defined in 11 U.S.C. § 101(10A)(A)(I), subject to a showing of a substantial change in circumstances.[8]

In the instant case, the Debtors argue that *Lanning* is only applicable to cases where a "significant loss of income results in a situation where the debtor is incapable of making payments required under the original [Form 22C] analysis." Because the Debtors' original Form 22C Disposable Income was negative, the Debtors can "pay the zero requirement result to the unsecured creditors." In other words, if Form 22C Disposable Income is negative, Debtors are not required to pay anything to unsecured creditors so any change in circumstances does not affect the Debtors' ability to make payments required under Form 22C. This argument begs the questions of what amount the Debtors must pay into a chapter 13 plan for the plan to be confirmable and what is the Debtors' projected disposable income.

In effect, chapter 13 debtors with negative Disposable Income are in the same position as chapter 13 debtors whose Current Monthly Income is below the applicable state median income and who are not required to calculate Disposable Income using Form 22C. In order to have a

---

[8] *Id.* at 1282.

confirmable chapter 13 plan, below median income debtors must demonstrate that they have sufficient monthly net income to fund a chapter 13 plan and satisfy the requirement of §1325(a)(6). They must also propose payments that will satisfy the requirements of §1325(a)(4). In order to satisfy these requirements, the below median income debtors must demonstrate to the court that they have sufficient regular income to fund a plan that will pay all secured debt proposed to be paid through the plan, pay all chapter 13 administrative expenses, pay all of their attorney's fees if they are being paid through the plan, and provide a return to unsecured creditors in an amount that is no less than the amount unsecured creditors would receive in a chapter 7 case. Chapter 13 debtors with above-median Current Monthly Income and negative Form 22C Disposable Income can do no less.

Although not expressly stated by the Debtors, their argument is that the forward-looking approach adopted by the Tenth Circuit is applicable only to chapter 13 cases that are factually similar to *Lanning* and that the mechanical approach should be used for their case.[9] A careful analysis reveals that the Debtors have actually abandoned the mechanical approach in this case. The mechanical approach, if applied to the facts of this case, prohibits Debtors from confirming a chapter 13 plan. To confirm a chapter 13 plan, § 1325(a)(6) requires this Court to find the Debtors "will be able to make all payments under the plan and to comply with the plan." Pursuant to § 1325(a)(4), Debtors must pay a minimum of $1,394.06 to unsecured creditors and they must pay their attorneys' fees through the plan. Debtors cannot confirm a plan without some projected disposable income. According to their Form 22C, Debtors have no Disposable

---

[9]The Court believes that *Lanning* adopted a forward-looking approach for all chapter 13 cases. Using a debtor's Form 22C income as debtor's projected disposable income for chapter 13 plan purposes does not necessarily mean the mechanical approach has been applied. The calculation of Disposable Income on Form 22C may be mechanical, but its incorporation into a chapter 13 plan is forward-looking.

Income to fund a plan. A strict application of the mechanical approach does not allow Debtors to argue that they have projected disposable income because they cannot rebut the presumption that their Disposable Income is negative.

One of the problems with the mechanical approach is that, in many instances, it perpetuates a fiction. In the *Lanning* case, the debtor's income was significantly less than the Current Monthly Income on her Form 22C. Given the facts in that case, it was fictitious to assert that her income would be the same in the future. In the present case, it is fictitious for Debtors to assert that they have no projected disposable income when they in fact have at least $130.00 a month which they propose to contribute to a plan.

In reality, Debtors are asking the Court to ignore the results of the mechanical calculation of Disposable Income on their Form 22C and recognize that they in fact have monthly net income, specifically $130.00 each month, to fund a plan. But once the mechanical approach is abandoned by the Debtors, the only alternative is to calculate their projected disposable income using the forward-looking approach. Under the forward-looking approach described in *Lanning*, Disposable Income is presumed to be the debtors' projected disposable income. Debtors have shown that Form 22C Disposable Income fails to reasonably reflect the Debtors' projected disposable income and they actually have monthly net income to pay to the chapter 13 plan. The forward-looking approach permits the amount of Debtors' presumed projected disposable income to be rebutted "upon a showing of special circumstances at the time of plan confirmation."[10]

---

[10] *Lanning* at 1270.

This Court concludes that the forward-looking approach adopted by the *Lanning* Court should be applied in this case. Under *Lanning*, a chapter 13 debtor's Form 22C Disposable Income is presumed to be the debtor's projected disposable income. If this presumption is not rebutted, then the Debtors' Form 22C Disposable Income is the projected disposable income for the chapter 13 plan. The forward-looking approach "permits the amount of presumed projected disposable income to be rebutted upon a showing of special circumstances at the time of plan confirmation."[11] The Court finds that the Debtors' need to rebut the negative Disposable Income calculation on their Form 22C constitutes a special circumstance that permits the use of the forward-looking approach to establish a positive projected disposable income.

**B.    If a Debtor's Form 22C Disposable Income is Negative, Debtor's Projected Disposable Income May Be Calculated Using Schedules I and J.**

By reliance on Schedules I and J, the Debtors have demonstrated to the Court that they have monthly net income of $130.00 per month. The Debtors' reliance on Schedules I and J is completely appropriate. Once it is established that a debtor's Form 22C does not accurately project the debtor's future ability to fund a plan, the amount of the debtor's projected disposable income may be calculated using an alternative method. The most obvious method is Schedules I and J. "Prior to the amendment of section 1325, Schedules I and J were the main reference points for determining debtor's projected disposable income. However, if the bankruptcy court

---

[11] *Id* at 1270 (emphasis added).

had reason to believe that those schedules did not accurately predict the debtor's actual ability to pay, other evidence was also considered."[12]

Even after the BAPCPA amendments to § 1325, Schedules I and J are an appropriate reference point for determining a below-median income debtor's projected disposable income. Under the forward-looking approach, Schedules I and J are also an acceptable reference point for determining above-median income debtors' projected disposable income if Form 22C fails to reasonably reflect their projected disposable income.

### C.  The Applicable Commitment Period.

In the *Lanning* case, the Tenth Circuit did not make any finding with respect to the "applicable commitment period" defined in § 1325(b)(4).  The Court stated that a "ruling on the relevant duration of the commitment period is not at issue in this appeal."[13]  This Court is unaware of any controlling case authority regarding the determination of the applicable commitment period.

It is statutorily established pursuant to §1325(b)(4)(A)(ii) that the applicable commitment period in this case is 60 months.  Debtors do not dispute that the applicable commitment period is 60 months.  The Debtors ask this Court to rely on *In re Fuger*[14] and hold that the 60-month applicable commitment period is monetary, not temporal, and that they may satisfy the requirements of §1325(b)(1)(B) in a period that is less than 60 months.

---

[12] *In re Lanning*, 380 B.R. 17, 24 (10th Cir. BAP 2007).

[13] *Lanning*, 545 F.3d 1269, 1274 n. 4.

[14] *In re Fuger*, 347 B.R. 94 (Bankr. D. Utah 2006).

Debtors are relying on their Schedules I and J to establish a positive monthly net income of $130.00 per month to fund a Chapter 13 plan. This reliance on Schedules I and J is appropriate and is not disputed by the Trustee. What the Trustee disputes is that Debtors, who have Current Monthly Income which is over the median income for Utah, do not have to pay $130.00 for 60 months. Debtors argue that because their Form 22C Disposable Income is negative they do not have to commit the $130.00 per month for 60 months; they can "pay the zero requirement result to the unsecured creditors." Debtors assert that their plan payments are driven by the liquidation analysis of § 1325(a)(4) and they may "volunteer" or dictate the amount of plan payments so long as they achieve $1,394.06 which is the amount required by § 1325(a)(4).

The Debtors' reliance on *Fuger* is misplaced. The *Fuger* case is factually distinguishable from this case. In the *Fuger* case, the debtor's calculation of Disposable Income on Form 22C was negative and the court ruled on those specific facts. As the court in *Fuger* stated:

> The Debtors' Statement of Current Monthly Income results in a negative number. The Trustee has not attempted to show that their projected disposable income is substantially different from the figures listed on Form B22C.[15]

In a footnote the Court also stated:

> The Court notes that despite their negative disposable income, the Debtors propose to pay unsecured creditors a total of $500. The Court would not be surprised if the Debtors' projected disposable income is different from the disposable income computed on Form B22C. Nevertheless, neither the Trustee nor any party in interest has presented evidence to rebut the presumption discussed in Jass that the calculations on Form B22C

---

[15]*Id.* at 102-103.

10

> represent the Debtors' projected disposable income. If the presumption were rebutted by evidence, the Court would require the Debtors to comply with § 1325(b)(1)(B) by providing the unsecured creditors their monthly disposable income multiplied by the "applicable commitment period," which is 60 months in this case.[16]

In the present case, the presumption that the Disposable Income on Form 22C represents the Debtors' projected disposable income has been rebutted by Debtors' Schedules I and J and the Trustee's agreement that this amount represents the Debtors' monthly net income. Pursuant to *Fuger*, the Debtors must comply with § 1325(b)(1)(B) by providing the unsecured creditors their projected disposable income multiplied by the applicable commitment period, which is 60 months in this case.

Under the forward-looking approach, once the presumption has been rebutted that the Disposable Income on Form 22C represents the Debtors' projected disposable income, projected disposable income is calculated using an alternative method. Once the projected disposable income has been calculated, all projected disposable income must be committed to the plan. The Debtors cannot propose less. In this case, the projected disposable income is $130.00 multiplied by 60 which equals $7,800.00. The only source of payments under the plan are the monthly payments of $130.00, so the minimum plan term must be 60 months.

---

[16]*Id.* at 103, n. 35.

**D. Debtors' Social Security Income Must be Included in Their Calculation of Future Disposable Income.**

Debtors also argue that their social security income, because it is exempt, cannot be used to force the Debtors to pay more than the $1,750.00 liquidation amount. It is true that social security income is excluded from Current Monthly Income, but it is not necessarily excluded from projected disposable income. The Court acknowledges that in most instances Current Monthly Income as defined in § 101(10A) will be the income debtors use to establish their projected disposable income. However, Current Monthly Income "provides the starting point for determining the disposable income that debtors may be required to pay to unsecured creditors."[17] If Form 22C fails to reasonably represent a debtor's disposable income because it results in a negative amount, then in order to have a confirmable plan, the debtor must propose an alternative calculation that results in a positive projected disposable income. Once Form 22C is abandoned, Current Monthly Income as defined in § 101(10A) is not necessarily the controlling inquiry; projected disposable income is the relevant inquiry.

As discussed above, if Form 22C fails, the most reasonable alternative method to calculate projected disposable income is Schedules I and J. This is the method Debtors have elected to use. Schedule I clearly includes social security income. Additionally, courts have consistently included social security income in the calculation of projected disposable income.[18]

---

[17]Current monthly income ("CMI") is defined in § 101(10A) of the Code, and the means test is set out in § 707(b)(2). These provisions have a variety of applications. . . . In Chapters 11 and 13, CMI provides the starting point for determining the disposable income that debtors may be required to pay to unsecured creditors. 2005-2008 Advisory Committee Note to Official Forms 22A, 22B and 22C.

[18]See *In re Cornelius*, 195 B.R. 831, 835 (Bankr. N.D.N.Y. 1995); *In re Hagel*, 171 B.R. 686 (Bankr. D. Mont. 1994), *aff'd*, 184 B.R. 793 (B.A.P. 9th Cir., 1995); *In re Solomon,* 166 B.R. 3832, 841 (Bankr. D. Md. 1994) *rev'd on other grounds*, 67 F.3d 1128 (4th Cir. 1995); *In re Schnabel*, 153 B.R. 809 (Bankr. N.D. Ill. 1993).

More problematic for the Debtors, however, is the fact that they must include their social security income in their monthly income in order to establish a positive monthly net income. If Debtors exclude social security income from their Schedule I, their monthly net income on Schedule J will be negative and they will be unable to propose a confirmable plan. While relying on the inclusion of social security income to establish confirmability under § 1325(a)(6), Debtors are asking this Court to confirm a plan that does not apply all projected disposable income to payments to unsecured creditors under the plan as required by § 1325(b)(1)(B). Debtors maintain that because social security income is exempt, they "may volunteer such payments as they have in this case to achieve a $1,750 return to the unsecured creditors class." Debtors appear to be relying on the age-old desire to "have one's cake and eat it, too."

While it is true that a debtor's election to seek relief under chapter 13 is voluntary, once that election is made the debtor's compliance with statutory requirements under chapter 13 is not voluntary. A debtor should not be permitted to include social security income for purposes of § 1325(a)(6) and exclude it under § 1325(b)(1)(B). The Court is unwilling to accept the proposition that Congress intended to give debtors the discretion to dictate the amount of future disposable income they want to contribute to a plan. Whatever method Debtors elect to establish their projected disposable income, "all of the debtor's projected disposable income to be received in the applicable commitment period" must be applied to make payments to unsecured creditors under the plan.

The BAPCA amendments were intended to ensure that debtors repay creditors the maximum they can afford.

> Perhaps the best statement of the overarching purpose of the consumer aspects of the BAPCPA comes from a House Report issued by the Committee on the Judiciary just prior to enactment of the bill: "The heart of [BAPCPA's] consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ('needs-based bankruptcy relief' or 'means-testing'), which is intended to ensure that debtors repay creditors the maximum they can afford." H.R.Rep. No. 109-31, pt. 1, at 2 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 89. Commenting on this statement, one bankruptcy court has pointed out that "[t]he words 'maximum' and 'afford' tell the story. Congress intended that debtors pay the greatest amount within their capabilities. Nothing more; nothing less." *In re Kibbe,* 361 B.R. at 314. [19]

The Debtors have shown that they can pay $130.00 per month, and payment of this amount for 60 months is within their capabilities.

## CONCLUSION

If a debtor's Disposable Income on Form 22C is negative, he can establish a positive projected disposable income using Schedules I and J. Regardless of the method used to calculate projected disposable income, all projected disposable income to be received in the applicable commitment period must be applied to make payments to unsecured creditors under the plan. Income sources used to establish a projected disposable income for purposes of § 1325(a)(6) cannot be excluded for § 1325(b)(1)(B) purposes.

In the present case, Debtors may use Schedules I and J to establish their projected disposable income of $130.00 per month. Because their Current Monthly Income defined in § 101(10A) is above the median income for Utah, the applicable commitment period in their case is 60 months. The Debtors may not use their social security income to satisfy the requirements

---

[19] *Lanning*, 545 F.3d at 1280-1281.

of § 1325(b) and exclude it from § 1325(b)(1)(B) requirements. For the Debtors' chapter 13 plan to be confirmable, they must pay $130.00 for 60 months.

-----------------------------------------------End of Document---------------------------------------------------

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **Memorandum Decision** will be effected through the Bankruptcy Noticing Center to the following parties.

Kevin R. Anderson
Janci M. Lawes
Kellie K. Nielsen
405 South Main Street, Suite 600
Salt Lake City, UT 84111

David T. Berry
Lesa M. Tripp
Berry & Tripp
5296 South Commerce Drive
Suite 200
Salt Lake City, UT 84107

Orin A. Timothy
Karen D. Timothy
621 Palm Circle
Washington Ut 84780